No. 11-17187

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NORTHSTAR FINANCIAL ADVISORS INC.,
on behalf of itself and all others similarly situated,

*Plaintiff-Appellant*,

v.

SCHWAB INVESTMENTS; MARIANN BYERWALTER, DONALD F.
DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B.
SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R.
SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER, and JOHN F.
COGAN AS TRUSTEES OF SCHWAB INVESTMENTS; and CHARLES
SCHWAB INVESTMENT MANAGEMENT, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California (Koh, J.)

BRIEF OF *AMICI CURIAE* INVESTMENT COMPANY INSTITUTE and
INDEPENDENT DIRECTORS COUNCIL IN SUPPORT OF
APPELLEES' PETITION FOR REHEARING AND REHEARING EN BANC

James O. Fleckner
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Telephone: (617) 570-1000

Mark Holland
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800

Marco E. Adelfio
Michael K. Isenman
William M. Jay
Andrew Kim
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, D.C. 20001
Telephone: (202) 346-4000

Dated: April 2, 2015

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Investment Company Institute and Independent Directors Council have no parent corporation, and no publicly-owned corporation owns ten percent (10%) or more of their stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF AMICI CURIAE ...................................................... 1

ARGUMENT ....................................................................................... 2

I.    The Panel Decision Injects Confusion And Uncertainty Into Issues Of National Importance Involving The Mutual Fund Industry .................. 2

II.   The Panel Decision's Holdings And Analysis Misapprehends Issues Of National, And Exceptional, Importance Involving Federal And Massachusetts Law Governing Mutual Funds. ........................................ 5

      A.    The Panel Decision Improperly Rejects The Congressional Decision To Entrust Mutual Fund Governance To Fund Boards, Particularly To Independent Board Members. .................... 5

      B.    The Panel Misapprehends Massachusetts Law And Strips Fund Boards Of A Fundamental Governing Power When It Holds That A Fund Injury Gives Rise To A Direct Rather Than Derivative Claim. .................................................................. 9

      C.    The Panel Misapprehends Massachusetts Law When It Holds That The Board Of A Mutual Fund Organized As A Business Trust Owes A Duty To Shareholders Separate From Its Duty to the Trust ............................................................................. 11

      D.    The Panel's Conversion Of A Fund Prospectus Into An Enforceable Contract Undercuts Congress' And The SEC's Comprehensive Regulatory Framework Governing Mutual Funds ................................................................................. 14

III.  In The Alternative, The Court Should Grant Rehearing And Certify Questions Of Massachusetts Law To The  State High Court .................... 17

CONCLUSION .................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:                                                                                    <u>Page</u>

*Alexander v. Sandoval*,
    532 U.S. 275 (2000) .......................................................................16

*Arizonans For Official English v. Arizona*,
    520 U.S. 43 (1997) .........................................................................18

*Astra USA v. Santa Clara Cnty.*,
    131 S. Ct. 1342 (2011) ...................................................................17

*Burks v. Lasker*,
    441 U.S. 471 (1979) .................................................................6, 7, 8

*Forsythe v. Sun Life Fin.*,
    417 F. Supp. 2d 100 (D. Mass. 2006) ............................................10

*Halebian v. Berv*,
    590 F.3d 195 (2d Cir. 2009),
    *modified*, 644 F.3d 122 (2d Cir. 2011) ...........................................19

*Halebian v. Berv*,
    931 N.E.2d 986 (Mass. 2010) .............................................11, 13, 19

*Harhen v. Brown*,
    730 N.E.2d 859 (Mass. 2000) ........................................................11

*In re Columbia Entities Litig.*,
    No. 04-11704, 2005 WL 6776751 (D. Mass. Nov. 30, 2005) ......10, 13

*Jackson v. Stuhlfire*,
    547 N.E.2d 1146 (Mass. App. Ct. 1989) ........................................10

*Jernberg v. Mann*,
    358 F.3d 131 (1st Cir. 2004) ..........................................................13

*Kremen v. Cohen*,
    325 F.3d 1035 (9th Cir. 2003) ........................................................19

*Lapidus v. Hecht*,
    232 F.3d 679 (9th Cir. 2000) ......................................................9, 10

iii

*Northstar Fin. Advisors v. Schwab Invs.*,
  615 F.3d 1106 (9th Cir. 2010) ............................................................16

*Olmsted v. Pruco Life Ins.*,
  283 F.3d 429 (2d Cir. 2002) ........................................................ 16-17

*Orkin v. Taylor*,
  487 F.3d 734 (9th Cir. 2007) ............................................................18

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist.*,
  294 F.3d 1085 (9th Cir. 2002) ..........................................................18

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
  763 F.3d 1232 (9th Cir. 2014) ..................................................... 17-18

*Richardson v. Clarke*,
  364 N.E.2d 804 (Mass. 1977) ...........................................................12

*Santomenno v. John Hancock Life Ins.*,
  677 F.3d 178 (3d Cir. 2012) .............................................................17

*Swartz v. Sher*,
  184 N.E.2d 51 (Mass. 1962) .............................................................14

*Tooley v. Donaldson, Lufkin & Jenrette*,
  845 A.2d 1031 (Del. 2004). ..............................................................10

## STATUTES:

Securities Act of 1933, 15 U.S.C. § 77a *et seq.*

  § 10(a)(3), 15 U.S.C. § 77j(a)(3) .......................................................15

  § 11(a), 15 U.S.C. § 77k(a) .............................................................16

  § 12, 15 U.S.C. § 77*l* ...................................................................16

Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.*

  § 2(a)(3), 15 U.S.C. §§ 80a-2(a)(3) .....................................................7

  § 2(a)(9), 15 U.S.C. §§ 80a-2(a)(9) .....................................................7

  § 2(a)(12), 15 U.S.C. § 80a-2(a)(12) ..................................................4, 13

iv

§ 2(a)(19), 15 U.S.C. §§ 80a-2(a)(19) ...................................................7

§ 10(a), 15 U.S.C. § 80a-10(a) ...........................................................6

§ 15(a)(2), 15 U.S.C. § 80a-15(a)(2) ...................................................8

§ 15(c), 15 U.S.C. § 80a-15(c) ...........................................................4

§ 31(a)(1), 15 U.S.C. § 80a-30(a)(1) ...................................................4

§ 36(b), 15 U.S.C. § 80a-35(b) .........................................................16

§ 42(a), 15 U.S.C. § 80a-41(a) .........................................................16

Mass. Gen. Laws ch. 156D, § 7.42 ...................................................11

Mass. Gen. Laws ch. 156D, § 7.44 ...............................................11, 13

Mass. Gen. Laws ch. 182, § 2B .........................................................12

### SECURITIES AND EXCHANGE COMMISSION RULES AND REGULATIONS:

17 C.F.R. § 230.485(a)......................................................................15

17 C.F.R. § 230.485(b) .....................................................................15

17 C.F.R. § 270.0-1(a)(7)(ii)...............................................................7

17 C.F.R. § 270.10f-3(b)(10) ...............................................................4

17 C.F.R. § 274.11A ........................................................................14

SEC Form N-1A,
    *available at* http://www.sec.gov/about/forms/formn-1a.pdf .............15

### COURT RULES:

Mass. S.J.C.R. 1:03 .........................................................................19

### OTHER AUTHORITIES:

ICI, 2014 Investment Company Fact Book,
    *available at* http://www.ici.org/pdf/2014_factbook.pdf...................3, 4

ICI and IDC, Overview of Fund Governance Practices, 1994-2012 (2013),
*available at* http://www.idc.org/pdf/pub_13_fund_governance.pdf ....................6

Robert A. Robertson, *Fund Governance: Legal Duties of Investment
Company Directors* (2009) ................................................................................12

S. Rep. No. 91-184, 91st Cong., 2d Sess. (1969) ........................................................7

## STATEMENT OF AMICI CURIAE[1]

The Investment Company Institute ("ICI") is the national association of registered investment companies in the United States.  ICI's members include open-end investment companies (the most common kind of investment company, which includes both mutual funds and most exchange-traded funds ("ETFs")), closed-end investment companies, and unit investment trusts.  ICI's members collectively account for 97% of the over $17 trillion in U.S. fund assets.

ICI has three core missions:  encouraging adherence to high ethical standards by all industry participants; promoting public understanding of funds; and advancing the interests of funds and their shareholders, directors, and investment advisers.  As part of these missions, ICI pursues an extensive research program and is the primary source of aggregate industry data relied on by government regulators, industry participants, and independent observers.

The Independent Directors Council ("IDC"), part of ICI, aims to advance the education, communication, and policy positions of fund independent directors and promote public understanding of their role.  IDC supports fund independent directors in fulfilling their responsibilities to advance the interests

---

[1] No counsel for a party authored any part of this brief.  No party or party's counsel, and no person other than *amici curiae* or their counsel, made a monetary contribution intended to fund the brief's preparation or submission.

1

of fund shareholders.  It promotes the highest standards of fund governance for

the benefit and protection of fund shareholders.  It keeps fund directors informed

about issues that affect their ability to fulfill their responsibilities while adapting

to the rapidly changing financial services landscape.  IDC's activities are led by

a Governing Council of independent directors from among the nearly 2,000

directors who sit on boards of ICI member funds.  IDC provides the perspective

of fund independent directors on policy matters.

Both ICI and IDC regularly engage in legislative, regulatory, and other

initiatives aimed at increasing government and public awareness of issues

affecting funds, directors, and their shareholders.  In view of their respective

constituents, missions and expertise, ICI and IDC are well-suited to assist the

Court in understanding the extraordinarily broad impact of the panel's decision

on mutual funds and their shareholders, boards, and investment advisers.

## ARGUMENT

### I.  The Panel Decision Injects Confusion And Uncertainty Into Issues Of National Importance Involving The Mutual Fund Industry.

The panel's decision departs from long-standing law governing mutual

funds and creates confusion and uncertainty nationwide.  Using sweeping

language, the panel has created a new path to liability that will extend far

beyond this case's narrow factual allegations.  Over one-third of the funds[2] in this country are organized under the same legal structure (Massachusetts business trusts) that the panel interpreted here.  Much of the decision's reasoning, moreover, is not confined to those entities but turns on mistaken interpretation of rules and attributes applicable to *every* mutual fund.

This far-reaching impact makes the issues raised exceptionally important. Mutual funds are the primary vehicle for saving and investing in the United States.  Over 96 million Americans, including over 56 million U.S. households, invest over $17 trillion in over 10,000 different funds.  *See* ICI, 2014 Investment Company Fact Book 8, 16, 102, *available at* http://www.ici.org/pdf/2014_factbook.pdf ("Fact Book").  The decision's impact will therefore be felt by millions of fund shareholders.

As explained below, the panel decision departs from long-established law governing mutual funds.  It creates new legal relationships and duties between shareholders and boards.  It up-ends the fund governance structure by depriving boards of the ability to control litigation brought on the fund's behalf.  It exposes funds, boards, and advisers to the specter of litigation under novel legal theories.  It will discourage qualified individuals from serving on fund boards,

---

[2] For the remainder of the brief, "fund" is used as shorthand for "mutual fund" and not other types of investment companies.

3

especially for funds organized as Massachusetts business trusts. It treats fund prospectuses—disclosure documents whose content is dictated by regulation and which are revised annually—as binding contracts. Most of all, it injects massive uncertainty into what was understood to be a clearly established legal framework governing mutual funds.

The decision's impact will be especially deleterious for Massachusetts business trusts, which comprise more than one-third of all funds. Although comprehensively regulated by the Securities and Exchange Commission ("SEC") under the Investment Company Act of 1940 ("ICA") and other federal securities statutes, mutual funds are typically organized under state law either as corporations or business trusts (sometimes called statutory trusts). The three most popular organizational forms are Massachusetts business trusts, Delaware statutory trusts, and Maryland corporations. As of 2013, 38% of mutual funds were organized as Massachusetts business trusts. Fact Book at 225.

The panel decision will also adversely affect the boards that govern mutual funds. Fund board members are called either "trustees" (for business trusts) or "directors" (for corporations), and the ICA expressly defines "director" to include both. 15 U.S.C. § 80a-2(a)(12). Fund boards have extensive responsibilities set forth in the ICA and regulations thereunder. *See, e.g.*, 15 U.S.C. §§ 80a-15(c), 80a-30(a)(1); 17 C.F.R. § 270.10f-3(b)(10).

4

As a result of the panel decision, both the amount and the cost of fund litigation will spike. Cases that would otherwise be resolved at the pleadings stage may now proceed to discovery. Litigants will engage in forum shopping, as plaintiffs seek to bring actions in district courts bound by the panel decision's precedent.

Costs associated with this uncertainty and increased litigation will be borne not only by funds and their investment advisers, but also by the millions of Americans who own shares in mutual funds to achieve their retirement and other savings goals. It is shareholders who will bear higher insurance costs and who will be deprived of the benefit of the service of qualified individuals who choose not to serve on boards because of increased litigation risk. These are issues of exceptional, and national, importance, and justify rehearing en banc.

## II. The Panel Decision's Holdings And Analysis Misapprehends Issues Of National, And Exceptional, Importance Involving Federal And Massachusetts Law Governing Mutual Funds.

### A. The Panel Decision Improperly Rejects The Congressional Decision To Entrust Mutual Fund Governance To Fund Boards, Particularly To Independent Board Members.

The panel decision refuses to accept that, under federal law, mutual funds are overseen by a board that includes independent trustees. Relying on a twelve-year-old newspaper column criticizing the industry, the panel concludes that funds are "essentially puppets of the investment adviser" and that their boards

5

need not be consulted before litigation is filed. Slip Op. at 52-53. The panel fundamentally misapprehends both trustees' independence and their authority under federal law.

Contrary to the panel's view, the Supreme Court repeatedly has recognized independent trustees' critical role in protecting shareholders. "[T]he structure and purpose of the ICA" make clear "that Congress entrusted to the independent directors of investment companies … the primary responsibility for looking after the interests of the funds' shareholders." *Burks v. Lasker*, 441 U.S. 471, 484-85 (1979).

As the panel recognized, mutual funds are subject to "a comprehensive regulatory framework" under the ICA. Slip Op. at 5. The ICA requires at least 40% of a fund's trustees to be independent. 15 U.S.C. § 80a-10(a). Today, almost all funds well exceed that requirement, and 85% of funds have boards where at least three-quarters of members are independent. ICI and IDC, Overview of Fund Governance Practices, 1994-2012, at 1, *available at* http://www.idc.org/pdf/pub_13_fund_governance.pdf.

Far from being "fairly loose," as the panel opined (Slip Op. at 52), the ICA's board independence rules are detailed and strict. Any affiliation with or investment in a fund's adviser or its affiliates by the trustee or a family member, for example, would cause a trustee to be "interested" and therefore not

6

independent. *See* 15 U.S.C. §§ 80a-2(a)(3), (9), (19) (defining "interested person," "affiliated person," and "control"). For funds to rely on core SEC regulations necessary to run their business, any new independent trustees must be selected and nominated exclusively by existing independent trustees, and not by the fund's adviser or non-independent trustees. *See* 17 C.F.R. § 270.0-1(a)(7)(ii). In 1970, Congress strengthened the independence rules "to supply an independent check on management." *Burks*, 441 U.S. at 484 (quoting S. Rep. No. 91-184, 91st Cong., 2d Sess. 32 (1969)). In doing so, Congress expressly did "not intend[] to shift the responsibility for managing an investment company in the best interest of its shareholders from the directors of such company to the judiciary." S. Rep. No. 91-184, at 7.

Given independent trustees' essential role in the statutory scheme, the Supreme Court rejected a similar attempt to usurp trustees' traditional role in managing litigation over a fund's investments. Like the panel here, the Second Circuit had grounded its decision on concerns about whether trustees could be truly independent. *Burks*, 441 U.S. at 485 n.15. Characterizing unaffiliated trustees as "independent watchdogs," the Supreme Court rejected that misguided reasoning:

> Congress surely would not have entrusted such critical functions as approval of advisory contracts and selection of accountants to the statutorily disinterested directors had it shared the Court of Appeals' view that such directors could never be 'disinterested' where their codirectors or investment advisers were concerned.

*Id.*  The Supreme Court explained that "it would have been paradoxical for Congress to have been willing to rely largely upon 'watchdogs' to protect shareholder interests and yet," when it came to litigation involving a fund's investments, "require that they be totally muzzled."  *Id.* at 485.  The panel decision applies exactly the muzzle the Supreme Court rejected.

Illustrating its misapprehension of the board's role, the panel decision asserts that, because boards are not truly independent, "Congress required that the shareholders of the Fund annually approve the adviser contract."  Slip Op. at 53.  To the contrary, Congress expressly permits *either* boards or shareholders to annually approve the advisory contract.  15 U.S.C. § 80a-15(a)(2).  That Congress has "entrusted" such responsibility to fund boards demonstrates the "critical function[]" that independent trustees fulfill.  *Burks,* 441 U.S. at 485 n.15.

8

**B.** **The Panel Misapprehends Massachusetts Law And Strips Fund Boards Of A Fundamental Governing Power When It Holds That A Fund Injury Gives Rise To A Direct Rather Than Derivative Claim.**

The panel misapprehended well-established Massachusetts law when it held that (i) an injury to a fund that manifests itself as a "diminution in shareholder value" and (ii) a breach of the advisory agreement between a fund and its investment adviser each give rise to direct, rather than derivative, claims by shareholders. The panel decision mistakenly asserts that "the distinction between direct and derivative actions has little meaning in the context of mutual funds." Slip Op. at 46. The decision also deems shareholders to be "third-party beneficiaries" of the advisory agreement without analyzing whether any injury suffered by its breach is direct or derivative. Slip Op. at 54-60. By authorizing shareholders to circumvent Massachusetts' comprehensive statutory procedures governing shareholder derivative claims, the panel strips the board of its fundamental power to govern the trust's affairs.

This Court's own precedent makes clear that a court must "rely upon state law to determine whether the plaintiffs' claims are direct or derivative." *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). With respect to a Massachusetts business trust, the court must "apply Massachusetts law because the trust was organized under the laws of Massachusetts." *Id.*

Under Massachusetts law, "if the wrong underlying [a] claim results in harm to a plaintiff shareholder only because the corporate entity has been injured, with the plaintiff's injury simply being his proportionate share of the entity's injury, the harm to the shareholder is indirect and his cause of action is derivative." *Forsythe v. Sun Life Fin*., 417 F. Supp. 2d 100, 112 (D. Mass. 2006); *accord Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1989) (claim "alleging mismanagement or wrongdoing [by] officers or directors" "is properly derivative").

No Massachusetts case has ever recognized a mutual fund exception to this clearly established rule. To the contrary, courts routinely apply the rule to dismiss derivative claims incorrectly brought as direct claims against trustees of funds organized as Massachusetts business trusts. *See, e.g.*, *Forsythe*, 417 F. Supp. 2d at 112; *In re Columbia Entities Litig.*, 2005 WL 6776751, at *10 (D. Mass. Nov. 30, 2005). Moreover, this Court expressly held in *Lapidus* that if a mutual fund shareholder's injury is "the diminution in the value of his or her shares," the claim is derivative, not direct under Massachusetts law. 232 F.3d at 683.

To avoid this result, the panel relies not on *Massachusetts* but rather *Delaware* law, specifically *Tooley v. Donaldson, Lufkin & Jenrette*, 845 A.2d 1031 (Del. 2004). Slip Op. at 45-46. The Massachusetts high court has never

10

adopted the Delaware court's reasoning in *Tooley* and it is not the law in Massachusetts.

By mischaracterizing claims involving a diminution in shareholder value or a breach of the advisory agreement as direct, the panel strips the fund board of the power that Massachusetts law preserves for it:  the power to "set the corporation's business policy, including the decision whether to pursue a lawsuit."  *Harhen v. Brown*, 730 N.E.2d 859, 865 (Mass. 2000).  In *Halebian v. Berv*, 931 N.E.2d 986 (Mass. 2010), the Massachusetts high court made clear that both *Harhen*'s reasoning and Massachusetts' recently-enacted statute governing derivative actions apply fully to mutual funds organized as Massachusetts business trusts.  *Id.* at 988 n.4, 990.  Unlike in Delaware, where demand may be excused on grounds of futility, the Massachusetts statute flatly prohibits a plaintiff from bringing a derivative action without first making a demand on the board.  Mass. Gen. Laws ch. 156D, § 7.42.  Once demand is made, the statute expressly empowers the board to determine whether the litigation should proceed or be terminated.  *Id.* § 7.44.

### C.   The Panel Misapprehends Massachusetts Law When It Holds That The Board Of A Mutual Fund Organized As A Business Trust Owes A Duty To Shareholders Separate From Its Duty to the Trust.

The panel's decision fundamentally alters the relationship between trustees and fund shareholders by creating a direct fiduciary relationship where

11

none previously existed.  This misapprehends governing Massachusetts law and, by increasing litigation exposure, will discourage experienced and qualified individuals from serving as trustees.

The panel reasoned that because trustees of ordinary trusts owe duties to trust beneficiaries, the board members of mutual funds organized as Massachusetts business trusts must owe fiduciary duties directly to shareholders. Slip Op. at 43-44.  But Massachusetts squarely rejected that reasoning.  Under Massachusetts law, "[b]usiness trusts possess many of the attributes of corporations and for that reason cannot be governed solely by the rules which have evolved for traditional trusts."  *Richardson v. Clarke*, 364 N.E.2d 804, 807 (Mass. 1977).  Therefore, "the duties and responsibilities of fund trustees are analogized to those of the directors of corporations," and "the same fiduciary standards" should apply whether the fund is organized as a business trust or a corporation.  Robert A. Robertson, *Fund Governance:  Legal Duties of Investment Company Directors*, § 2-02[2], at 2-17 to 2-18 (2009).

The Massachusetts legislature has confirmed that fund trustees should be treated like directors by statutorily decreeing that trustees of mutual funds organized as Massachusetts business trusts who satisfy the ICA's director independence standards also are "deemed…independent" under Massachusetts law.  Mass. Gen. Laws ch. 182, § 2B.  Massachusetts' high court then made

12

clear that Massachusetts' derivative action statute—which refers to "directors" rather than "trustees"—nonetheless applies equally to business trusts and corporations.  *Halebian v. Berv*, 931 N.E.2d 986, 988 n.4 (Mass. 2010); *see* Mass. Gen. Laws ch. 156D, § 7.44.  Consistent with this approach, Congress defined the term "director" in the ICA to include both directors and trustees.  15 U.S.C.§ 80a-2(a)(12).

Accordingly, like corporate board members, fund board members do not ordinarily owe a duty directly to shareholders.  The First Circuit explained:

> While it is sometimes said that directors and officers owe a fiduciary duty to the corporation and its shareholders, any responsibility to the latter is anchored in the duty to the former.  Otherwise, … [a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders.'

*Jernberg v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004) (citation and internal punctuation omitted).  The district court in Massachusetts applied *Jernberg* to mutual funds organized as Massachusetts business trusts and held that trustees owed a duty only to the funds themselves, and not to the shareholders.  *In re Columbia Entities Litig.*,  2005 WL 6776751, at *10 (dismissing direct claims against fund trustees).

To avoid this well-established rule, the panel decision quotes a half-century-old case that says trusts "are not corporations" (Slip Op. at 43), but then omits the very next sentence, in which the Massachusetts high court

explained that "this type of business organization in practical effect is in many respects similar to a corporation," *Swartz v. Sher*, 184 N.E.2d 51, 53 (Mass. 1962) (citation omitted), and ignores the subsequent developments in Massachusetts law.

Under the panel's ruling, serving as a fund trustee would mean accepting newly-established exposure to direct shareholder claims. This will discourage qualified individuals from serving as trustees, potentially depriving fund shareholders of the benefit of their services. It will also make liability insurance more costly to funds—and their shareholders.

### D. The Panel's Conversion Of A Fund Prospectus Into An Enforceable Contract Undercuts Congress' And The SEC's Comprehensive Regulatory Framework Governing Mutual Funds.

The panel's holding that a shareholder may enforce a prospectus's terms through a state-law claim for breach of contract completely up-ends the carefully crafted framework for regulating and enforcing the federal securities laws. Misunderstanding the nature and purpose of a fund prospectus, the panel substitutes its judgment about private rights of action for that of Congress and the SEC.

First, a fund prospectus is a disclosure document whose content is dictated by SEC regulation. *See* 17 C.F.R. § 274.11A. SEC Form N-1A sets forth strict requirements for the organization and content of a fund prospectus and other

information required in a registration statement. Form N-1A instructs that the prospectus "should include only as much information as is necessary to enable an average or typical investor to understand the particular characteristics of the Fund," while relegating to the "statement of additional information" ("SAI") the information that the SEC "has concluded is not necessary or appropriate in the public interest or for the protection of investors to be in the prospectus, but that some investors may find useful." SEC Form N-1A, General Instructions C(1)(c), C(2)(b), *available at* http://www.sec.gov/about/forms/formn-1a.pdf.

Federal law and SEC regulations expressly contemplate that fund prospectuses not remain static, but rather be updated, at least annually and any time there is a material change. When a prospectus is used more than nine months after its effective date, its financial information must be no older than 16 months. 15 U.S.C. § 77j(a)(3). As a result, mutual funds must update their prospectuses at least annually, and may include both material and non-material changes. *See* 17 C.F.R. § 230.485(a), (b). Current disclosure about a shareholder's shares thus appears not in the prospectus in effect when the shareholder purchased the shares, but rather in the currently operative prospectus, which the shareholder generally receives at least annually.

Second, the panel decision would create new private rights of action premised on the prospectus. Mutual funds and their advisers are already subject

15

to regulation under four interlocking federal statutes: the ICA, the Investment Advisers Act of 1940, the Securities Act of 1933 (the "Securities Act"), and the Securities Exchange Act of 1934. The SEC has promulgated comprehensive regulations that govern mutual funds, and it has—and uses—express statutory authority to enforce any violation. *See*, *e.g.*, 15 U.S.C. § 80a-41(a).

In addition to the SEC's broad enforcement powers, Congress has provided express causes of action that may be brought by shareholders or investors. A shareholder may sue on behalf of the fund if an adviser charges an excessive advisory fee. 15 U.S.C. § 80a-35(b). An investor can sue fund trustees directly if a registration statement includes a material misrepresentation. *Id.* § 77k(a). An investor can also sue for misstatements in prospectuses or other communications relating to fund sales. *Id*. § 77*l*.

But the Supreme Court has admonished that where Congress did not create private rights of action to enforce statutes, courts may not create them. *Alexander v. Sandoval*, 532 U.S. 275 (2000). Thus, courts—including another panel of this Court in an earlier appeal of this case—have repeatedly rejected attempts to imply additional private rights of action under the securities laws. *Northstar Fin. Advisors v. Schwab Invs.*, 615 F.3d 1106 (9th Cir. 2010) (rejecting private right of action under ICA § 13(a)); *accord Olmsted v. Pruco*

16

*Life Ins.*, 283 F.3d 429 (2d Cir. 2002) (same for ICA §§ 26, 27); *Santomenno v. John Hancock Life Ins.*, 677 F.3d 178 (3d Cir. 2012) (same for ICA § 47).

By deeming a fund prospectus to be part of a contract that shareholders may enforce, the panel decision creates a new means for shareholders to sue if a fund fails to comply with prospectus disclosure. *Cf. Astra USA v. Santa Clara Cnty.*, 131 S. Ct. 1342, 1348 (2011) (putative third-party beneficiary could not sue on contract theory to enforce statute with no right of action). In short, the panel decision drastically changes a well-established and robust legal framework in which Congress has already provided express statutory remedies.

### III. In The Alternative, The Court Should Grant Rehearing And Certify Questions Of Massachusetts Law To The State High Court.

ICI and IDC respectfully submit that Massachusetts law is absolutely clear, and that the panel's decision sharply departs from it. But if the Court instead believes that governing Massachusetts law is unsettled, ICI and IDC respectfully submit that, due to the panel decision's broad impact, the Court should grant rehearing and certify the pertinent questions of state law to the Supreme Judicial Court of Massachusetts (the "SJC"). The answers may both be dispositive here and "have far-reaching effects" on mutual funds and their millions of shareholders. *See Queen Anne Park Homeowners Ass'n v. State*

17

*Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. 2014). The Court should get authoritative answers, which can only come from the SJC.

The Supreme Court has made clear that federal courts should certify questions of state law that are "novel or unsettled." *Arizonans For Official English v. Arizona*, 520 U.S. 43, 79 (1997). That is no less true on rehearing, as this Court recognized in *Parents Involved in Community Schools v. Seattle School District*, 294 F.3d 1085 (9th Cir. 2002). On a petition for rehearing and rehearing en banc, the *Parents Involved* panel withdrew its decision and certified a dispositive question to the Washington Supreme Court. *Id.* at 1086. As the Court explained:

> "We have an obligation to consider whether novel state-law questions should be certified—and we have been admonished in the past for failing to do so."

*Id.* (citing *Arizonans*, 520 U.S. at 62, 76-79).

On whether a shareholder's claim is properly characterized as direct or derivative, the panel decision refers to "Massachusetts/Delaware law" and then proceeds to apply *Delaware* law, relying on the speculative assumption that a Massachusetts court would have followed subsequent developments in Delaware. Slip Op. at 45-48 & n.9. But state law must be taken "as it exists without speculating as to future changes in the law." *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). Moreover, the panel cites no Massachusetts authority

for its novel proposition that "the distinction between direct and derivative actions has little meaning in the context of mutual funds." Slip Op. at 46. And the panel created new law when it held that trustees owe a fiduciary duty directly to the shareholders of Massachusetts business trusts.

If the panel perceived ambiguity in Massachusetts law and found no satisfactory answer in the state's appellate decisions, the proper course was certification to the state high court. The SJC is expressly authorized to answer certified questions of Massachusetts law posed by federal courts. Mass. S.J.C.R. 1:03. The SJC has indicated a willingness to answer questions of Massachusetts law on fund governance, such as the Second Circuit's *sua sponte* query in *Halebian v. Berv*, 590 F.3d 195 (2d Cir. 2009)—a shareholder derivative action brought against the trustees of a Massachusetts business trust. *See Halebian v. Berv*, 931 N.E.2d 986 (Mass. 2010). That the Court *can* decide these state-law questions itself does not mean that it *should* under these circumstances. *Kremen v. Cohen*, 325 F.3d 1035, 1037-38 (9th Cir. 2003).

Accordingly, if the Court were to deem the state-law issues unsettled, the Court should grant rehearing and certify the following questions:

1. Does an injury to an ICA-registered Massachusetts business trust that causes a diminution in the value of the trust's shares give rise to a direct or derivative action by the trust's shareholders?

19

2.  Does an investment adviser's breach of the investment advisory agreement between that adviser and an ICA-registered Massachusetts business trust give rise to a direct or a derivative action by the trust's shareholders?

3.  Does a trustee of an ICA-registered Massachusetts business trust owe a fiduciary duty to the trust's shareholders separate from the trustee's duty to the trust?

## **CONCLUSION**

Because of the panel decision's profound impact on mutual funds and

their boards and shareholders, rehearing or rehearing en banc should be granted.

Respectfully submitted,

 s/ Michael K. Isenman

Marco E. Adelfio
Michael K. Isenman
William M. Jay
Andrew Kim*
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Telephone:  (202) 346-4000

James O. Fleckner
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Telephone: (617) 570-1000

Mark Holland
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800

*Attorneys for Amici Curiae Investment
Company Institute and Independent
Directors Council*

Dated:  April 2, 2015

* Admitted only in California.  Application to the D.C. Bar is pending; practice supervised by Michael K. Isenman.

21

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME RESTRICTIONS

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the attached Brief of *Amici Curiae* Investment Company Institute and Independent Directors Council in Support of Appellees' Petition for Rehearing and Rehearing En Banc complies with the type-volume limitations of Ninth Circuit Rule 29-2(c)(2) because it contains 4,193 words, as counted by Microsoft Word 2010, excluding the cover, corporate disclosure statement, table of contents, table of authorities, signature block, certificate of compliance, and certificate of service.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and Times New Roman size 14 font.

Dated: April 2, 2015

 s/ Michael K. Isenman
Michael Isenman
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Telephone: (202) 346-4000

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have caused the foregoing Brief of *Amici Curiae* Investment Company Institute and Independent Directors Council in Support of Appellees' Petition for Rehearing and Rehearing En Banc to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 2, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  April 2, 2015                    s/ Michael K. Isenman
                                        Michael Isenman
                                        GOODWIN PROCTER LLP
                                        901 New York Avenue NW
                                        Washington, DC 20001
                                        Telephone:  (202) 346-4000